# SUPREME COURT OF THE UNITED STATES

---

No. 20A96

---

## DANVILLE CHRISTIAN ACADEMY, INC., ET AL *v.* ANDY BESHEAR, GOVERNOR OF KENTUCKY

### ON APPLICATION TO VACATE STAY

[December 17, 2020]

On November 18, the Governor of Kentucky issued a temporary school-closing Order that effectively closes K–12 schools for in-person instruction until and through the upcoming holiday break, which starts Friday, December 18, for many Kentucky schools. All schools in Kentucky may reopen after the holiday break, on January 4. A religious private school and the Attorney General of Kentucky sought a preliminary injunction against the school-closing Order as applied to religious schools. The District Court granted a preliminary injunction, but the Sixth Circuit then stayed that injunction pending appeal.

The Governor's school-closing Order effectively expires this week or shortly thereafter, and there is no indication that it will be renewed. The Order applies equally to secular schools and religious schools, but the applicants argue that the Order treats schools (including religious schools) worse than restaurants, bars, and gyms, for example, which remain open. For the latter reason, the applicants argue that the Order is not neutral and generally applicable for purposes of *Employment Div., Dept. of Human Resources of Ore.* v. *Smith*, 494 U. S. 872 (1990). Several amici supporting the applicants argue in the alternative that even if the Order is neutral and generally applicable because it treats religious schools the same as secular schools, *Smith* still requires heightened scrutiny when the "application of a neu-

tral, generally applicable law to religiously motivated ac-
tion" also implicates "the right of parents" "to direct the ed-
ucation of their children." *Id.,* at 881 (citing *Pierce* v. *Soci-
ety of Sisters*, 268 U. S. 510 (1925); *Wisconsin* v. *Yoder*, 406
U. S. 205 (1972)).  The applicants did not squarely raise
that alternative *Smith* argument in the District Court, the
Sixth Circuit, or this Court.

Under all of the circumstances, especially the timing and
the impending expiration of the Order, we deny the appli-
cation without prejudice to the applicants or other parties
seeking a new preliminary injunction if the Governor issues
a school-closing order that applies in the new year.

JUSTICE ALITO, with whom JUSTICE GORSUCH joins, dis-
senting from the denial of application to vacate stay.

For the reasons explained in JUSTICE GORSUCH's dissent,
*post*, at ___, I would vacate the Sixth Circuit's stay of the
preliminary injunction issued by the District Court and re-
mand for further consideration in light of the proper legal
standards.  While I do not agree with the Court's denial of
the applicants' request for emergency relief, no one should
misinterpret that denial as signifying approval of the Sixth
Circuit's decision.  As I understand this Court's order, it is
based primarily on timing.  At this point, just a few school
days remain before the beginning of many schools' holiday
break, and the executive order in question will expire before
classes would normally begin next year.  The Court is there-
fore reluctant to grant relief that, at this point, would have
little practical effect.

I understand that reluctance, but in my judgment, it is
unfair to deny relief on this ground since this timing is in
no way the applicants' fault.  They filed this action on No-
vember 20, 2020, just two days after the issuance of the
Governor's executive order.  And when, on November 29,
the Sixth Circuit granted a stay of the order that would
have allowed classes to resume, the applicants sought relief

in this Court just two days later, on December 1. It is hard to see how they could have proceeded more expeditiously.

As things now stand, this action remains on the docket of the District Court. If the Governor does not allow classes to begin after the turn of the year, the applicants can file a new request for a preliminary injunction, and if the lower courts do not provide relief, the applicants may of course return to this Court.

# SUPREME COURT OF THE UNITED STATES

———

No. 20A96

———

## DANVILLE CHRISTIAN ACADEMY, INC., ET AL *v.* ANDY BESHEAR, GOVERNOR OF KENTUCKY

ON APPLICATION TO VACATE STAY

[December 17, 2020]

JUSTICE GORSUCH, with whom JUSTICE ALITO joins, dissenting from the denial of application to vacate stay.

Four weeks ago, the Governor of Kentucky issued two executive orders. One (the School EO) closed all elementary, middle, and high schools—including religious ones—for in-person learning, while leaving preschools, colleges, and universities untouched. The other (the Business EO) permitted virtually all other in-person activities to continue with only capacity restrictions. Movie theaters, indoor wedding venues, bowling alleys, and gaming halls remained open for business.

Religious schools challenged these decrees as a violation of the First Amendment, and the district court agreed with them. The court "wonder[ed] why" people "would be free to attend a lecture, go to work, or attend a concert, but not attend socially distanced chapel in school or pray together in a classroom that is following strict safety procedures and social distancing." *Danville Christian Academy, Inc.* v. *Beshear*, 2020 WL 6954650, *4 (ED Ky., Nov. 25, 2020). In the end, the court held that the Governor's EOs discriminated against the free exercise of religion and enjoined their enforcement against religious schools, so long as those schools followed all applicable sanitization and social distancing protocols.

The Sixth Circuit stayed the district court's injunction. *Commonwealth of Kentucky, Atty. Gen. Daniel Cameron,*

*ex rel. Danville Christian Academy, Inc.* v. *Beshear,* \_\_\_ F. 3d \_\_\_, 2020 WL 7017858 (Nov. 29, 2020). It did so by considering the School EO in isolation and ignoring the many activities permitted under the Business EO. Looking only to the School EO, the court explained, religious exercises were subject to "neutral" and "generally applicable" rules. *Id.*, at \*3. After all, the School EO treated religious and secular schools the same. Accordingly, the circuit concluded, the School EO triggered only rational-basis review and easily passed muster under the terms of *Employment Div. Dept. of Human Resources of Ore.* v. *Smith*, 494 U. S. 872 (1990).

Whatever the ultimate merits of this case, the Sixth Circuit's decisional path was flawed in at least two respects. First, the court had an obligation to address the plaintiffs' argument that the two EOs, considered together, resulted in unconstitutional discrimination against religion. Whether discrimination is spread across two orders or embodied in one makes no difference; the Constitution cannot be evaded merely by multiplying the decrees. See *Church of Lukumi Babalu Aye, Inc.* v. *Hialeah*, 508 U. S. 520, 539–540 (1993). Second, under this Court's precedents, even neutral and generally applicable laws are subject to strict scrutiny where (as here) a plaintiff presents a "hybrid" claim—meaning a claim involving the violation of the right to free exercise *and* another right, such as the right of parents "to direct the education of their children." *Smith*, 494 U. S., at 881.

Perhaps the Sixth Circuit's errors are understandable. *Smith*'s rules about how to determine when laws are "neutral" and "generally applicable" have long proved perplexing. See, *e.g.,* Laycock & Collis, Generally Applicable Law and the Free Exercise of Religion, 95 Neb. L. Rev. 1, 5–6 (2016). It is far from clear, too, why the First Amendment's right to free exercise should be treated less favorably than other rights, or ought to depend on the presence of another

right before strict scrutiny applies. See, *e.g., Kennedy* v. *Bremerton School Dist.*, 586 U. S. ___, ___ (2019) (ALITO, J., statement respecting denial of certiorari); McConnell, Free Exercise Revisionism and the *Smith* Decision, 57 U. Chi. L. Rev. 1109, 1121–1122 (1990).

Rather than vacate and remand in light of these problems, today's majority denies relief. On the merits, the majority suggests the applicants may not have "squarely" advanced the second argument about "hybrid" rights. But however that may be, no one doubts the applicants have always pressed the first argument—that the Governor's two EOs together discriminate against religion. The Sixth Circuit's failure to engage that argument is alone sufficient grounds for vacatur. The majority disputes none of this but instead turns to an assessment of the equities. Whatever the problems with the Sixth Circuit's order, it says, we should let this one go because this case is old news; winter break is coming soon, and the Governor's decrees will expire in a few weeks, on January 4.

I would assess the equities differently. The EOs remain in force, the dispute over them remains live, and the decision allowing them to stand is flawed. Nothing prevents us from saying so; no one attempts to suggest this case is moot; and the applicants are entitled to a fair assessment of their rights under accurate legal rules. The plaintiffs proceeded expeditiously in challenging the EOs; they have hardly sat on their rights. Nor should a Governor be able to evade judicial review by issuing short-term edicts and then urging us to overlook their problems only because one edict is about to expire while the next has yet to arrive. Come January 4, a new school semester will be about to start, and the Governor has expressly told us that he reserves the right to issue more decrees like these if and when religious schools try to resume holding classes. Rather than telling the parties to renew their fight in a month, asking the Sixth Circuit to resolve the case now, under accurate legal rules, would

be better for everyone—from the parents who might have to miss work and stay home should decrees like these be upheld, to the state public health officials who might have to plan for school if they are not.

Courts have a broader equity at stake here too. In their struggle to respond to the current pandemic, executive officials have sometimes treated constitutional rights with suspicion. In Kentucky, state troopers seeking to enforce gubernatorial orders even reprimanded and recorded the license plate numbers of worshippers who attended an Easter church service, some of whom were merely sitting in their cars listening to the service over a loudspeaker. *Maryville Baptist Church, Inc.* v. *Beshear*, 977 F. 3d 561, 563–564 (CA6 2020) (*per curiam*). Recently, this Court made clear it would no longer tolerate such departures from the Constitution. See *Roman Catholic Diocese of Brooklyn* v. *Cuomo*, 592 U. S. __, __–___ (2020) (*per curiam*) (slip op., at 3–6). We did so in a case where the challenged edict had arguably expired, explaining that our action remained appropriate given the Governor's claim that he could revive his unconstitutional decree anytime. *Id.,* at ___ (slip op., at 6). That was the proper course there, as I believe it is here. I would not leave in place yet another potentially unconstitutional decree, even for the next few weeks.

For these reasons, I respectfully dissent. I would grant the application, vacate the Sixth Circuit's stay, and remand the matter for further consideration under the proper legal standards.